UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE W.,                                    Case No. 25-10323

            Plaintiff,

v.                                             Matthew F. Leitman
                                               United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,                                      Curtis Ivy, Jr.
                                               United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

## I.   INTRODUCTION

Plaintiff Valerie W. filed a Title II application for a period of disability and

disability insurance benefits on August 26, 2021, and a Title XVI application for

supplemental security income on April 23, 2023, each alleging disability beginning

on July 28, 2021.  (ECF No. 7-1, PageID.224–30, 234–40).  The applications were

initially denied at the administrative level on September 15, 2022, and upon

reconsideration on March 17, 2023.  (*Id.* at PageID.131–48).  After requesting a

hearing, Plaintiff received a hearing before an Administrative Law Judge ("ALJ")

on September 14, 2023.  (*Id.* at PageID.63, 173–75).  Following the hearing, the

ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's

request for review on December 19, 2024.  (*Id.* at PageID.28–56).  The ALJ's

decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").  *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006). The case is now before the court for review of that decision under 42 U.S.C. § 405(g).  On April 18, 2025, the District Judge referred this matter to the undersigned to review the Commissioner's decision denying Plaintiff's claim for social security benefits.  (ECF No. 10).

After careful scrutiny of the record and the parties' briefs, and for the reasons below, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Summary Judgment* (ECF No. 12) be **GRANTED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 14) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED**.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

2

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.   STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a public assistance measure providing another resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line.  Eligibility for SSI is based on proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).  That said, while they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for determining whether a claimant is disabled.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).

4

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work ("PRW"); and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[1] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 58 years old on the alleged disability onset date.  (ECF No. 12, PageID.741).  She completed her high school education and some college.  (ECF No. 7-1 at PageID.70, 263).  Plaintiff's primary complaints include right leg and hamstring pain, and arthritis in the bilateral knees.  (*Id.* at PageID.262).  In the past, Plaintiff worked as a baker, home health aide, and in management in the fast-food industry.  (*Id.* 283).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has engaged in substantial gainful activity during the following periods: the alleged onset date of July 28, 2021, through September 27, 2022," but has not engaged in substantial gainful activity since September 28, 2022.  (*Id.* at PageID.47–48).  At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, osteoarthritis, obesity, and hypothyroidism.  (*Id.* at PageID.48).  But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations.  (*Id.* at PageID.50).  Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC") as follows:

> [T]the claimant has the [RFC] to perform light work as defined in 20
> CFR [§§] 404.1567(b) and 416.967(b) except with the following
> additional limitations: stand and/or walk for a total of four hours per
> eight-hour workday; lift up to 15 pounds and carry up to 18 pounds;
> never climb ladders, ropes, or scaffolds; occasionally climb ramps or
> stairs, stoop, kneel, crouch, and crawl; frequently balance;
> occasionally push and pull; occasionally reach overhead; avoid
> concentrated exposure to extreme cold, humidity, wetness, and
> vibration; avoid all use of hazardous moving machinery; and avoid all
> exposure to unprotected heights.

(*Id.* at PageID.51).

At **Step Four**, having consulted a vocational expert ("VE"), the ALJ concluded that Plaintiff has past work as donut maker (medium work as performed by Plaintiff and per the Dictionary of Occupational Titles ("DOT")), care aide (light-to-medium work, light as performed by Plaintiff), fast food worker (medium-to-light work, medium as performed by Plaintiff), and a composite job of fast food worker and manager (medium-to-light work, medium as performed by Plaintiff). (*Id.* at PageID.55). The ALJ found that Plaintiff "is capable of performing past relevant work as a care aide" as "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]." (*Id.* at PageID.55). As a result of that finding, the ALJ did not make any findings at **Step Five**. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] from July 28, 2021, through the date of this decision[.]" (*Id.* at PageID.56). Based on these findings, the ALJ denied Plaintiff's claim. (*Id.* at PageID.41).

## V.   DISCUSSION

Plaintiff presents one issue for the Court to consider in its review of the Commissioner's decision: Whether the ALJ erred by relying on VE testimony that improperly inferred the nature of Plaintiff's past work as it was actually performed, rather than relying on direct testimony or documentation.  (ECF No. 12, PageID.737).

At Step Four of the administrative analysis, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job."  SSR 82–62, 1982 WL 31386, at *2 (Jan. 1, 1982).[2]  As a general rule, the Step Four determination can be supported by the finding that claimant can perform his past relevant work as "actually performed," or, "as generally required by employers throughout the national economy."  SSR 82–61,

---

[2] Plaintiff cites both SSR 82-62 and SSR 24-2P in support of her argument.  "Although SSR 24-2P 'rescinds and replaces' SRR 82-62, SSR 24-2P only became effective on June 22, 2024."  *Joann B. v. Bisignano*, No. 6:25-CV-35-CHB, 2026 WL 192483, at *10 n.3 (E.D. Ky. Jan. 26, 2026) (quoting SSR 24-2P, 2024 WL 3291790, at *2 (June 6, 2024)).  The ALJ issued his decision on Plaintiff's claim on December 26, 2023.  (ECF No. 7-1, PageID.41, 56).  Thus, her claim was not pending before the Social Security Administration ("SSA") on June 22, 2024, when SSR 24-2P became effective.  Therefore, SSR 82-62 applies in this case, and not SSR 24-2P.  *See* SSR 24-2P, 2024 WL 3291790, at *2 n.1 ("We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. . . .  We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 495 n.4 (6th Cir. 2019) ("The version of the rules in effect in January 2017, when the ALJ rendered her opinion, applies.").

1982 WL 31387, at *2 (1982).  The claimant generally "bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work" either as previously performed or as generally required in the national economy.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  The former job is considered past relevant work "when it was done within the last 15 years, lasted long enough . . . to learn to do it, and was substantial gainful activity."  20 C.F.R. §§ 404.1565(a), 416.965(a).

In this case, the question of whether Plaintiff was capable of performing her past relevant work is critical because Plaintiff, who was 58 at the time of the alleged onset, was of "advanced age."  20 C.F.R. §§ 404.1567, 416.967.  "Medical-Vocational Rule 202.06, 20 C.F.R. part 404, subpart P, App. 2 directs a finding of disability for an individual 55 or over (advanced age) who is unable to perform any past relevant work and is limited to exertionally light or sedentary, unskilled work."  *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 424–25 (E.D. Mich. 2019).  As a result, if the ALJ were to find that Plaintiff was unable to perform past relevant work as a care aide or limited according to the regulations at step five, it would direct a finding of disability.

Plaintiff states that at step four, the ALJ concluded, based on the VE's testimony, Plaintiff was capable of performing her past relevant work as a care aide as she actually performed it. (ECF No. 12, PageID.742). Plaintiff argues that the DOT defines the job of care aide, also known as home health aide or home attendant, as requiring frequent reaching, but Plaintiff's RFC limited her to occasional reaching. (*Id.* at PageID.742–43). Plaintiff asserts that there was no testimony procured from Plaintiff addressing the frequency or ability of reaching while she performed this position, and ALJ relied upon the VE's testimony that made improper inferences about Plaintiff's past work. (*Id.* at PageID.743) (citing SSR 82-41) ("The claimant is in the best position to describe just what he or she did in PRW, how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc. Neither an occupational title by itself nor a skeleton description is sufficient.").

The Commissioner notes that Plaintiff does not contest the ALJ's RFC but argues that "ALJ erred in relying on the [VE]'s testimony that Plaintiff could perform the position of a care aide as *actually performed.*" (ECF No. 14, PageID.753) (emphasis in original). The Commissioner asserts that Plaintiff's argument should be rejected because Plaintiff performed work as a care aide after her alleged disability onset date at a substantial gainful employment level, and as such, she "successfully perform[ed] the job as a home aide throughout 2022." (*Id.*

10

at PageID.753–54). Plaintiff replied that the ALJ's findings do "not indicate whether Plaintiff was still capable of working as a home health aide after [substantial gainful activity] ended on September 27, 2022," through the date of the decision on December 26, 2023. (ECF No. 15, PageID.756).

At the hearing before the ALJ, the Plaintiff testified that she injured her hamstring while working in a bakery, which in turn caused issues with her knee. (ECF No. 72, PageID.71). Her physician placed her on multiple restrictions that led to her becoming part-time in the bakery, and the bakery reduced her to only four hours per week beginning August 2021. (*Id.* at PageID.71–72). Plaintiff testified that her brother ended up in the hospital and when he was discharged home, his assigned home care nurse mentioned that Medicaid had a program that would allow her to be paid while caring for her brother. (*Id.*). She then quit her, now part-time, job with the bakery so that she could care for her brother "24/7." (*Id.*). Plaintiff testified that she would assist her brother with getting in and out of the shower, getting dressed, getting him in and out of the vehicle for appointments, and cooking meals. (*Id.* at PageID.73). She testified that she was unable to lift her brother, so she would have to call for assistance if he fell to the floor, but because of her own condition(s) they had worked on a system where her brother would help her with tasks such as transferring from the wheelchair to the bed, car, or shower so that she did not have to lift as much of his body weight. (*Id.* at PageID.74–75).

She also testified that if he had been unable to assist her, that she would not have been able to care for him on a full-time basis or likewise care for another patient. (*Id.* at PageID.82). She stated that her brother passed away on December 27, 2022, and she has been unable to secure competitive employment since. (*Id.* at PageID.73). Plaintiff indicated that since her injury in the bakery and due to her degenerative disc disease in her spine, she had been unable to stand or walk long enough for her to sustain competitive employment. (*Id.* at PageID.80).

During the hearing, the ALJ noted that the care aide position, which occurred after the alleged onset date, would be taken under advisement to determine whether it qualified as substantial gainful activity, but it would be treated as such for the purpose of the hearing. (*Id.* at PageID.79). The VE found that the care aide position is semi-skilled work ("SVP: 3"), at medium exertional level, but that Plaintiff "performed it at light the skills garnered with the job specific [sic]." (*Id.* at PageID.88).

The ALJ presented the VE with hypotheticals, which the first and second hypotheticals, combined, serve as the basis of the Plaintiff's RFC as determined by the ALJ. (*Id.* at PageID.94–95). Plaintiff's RFC includes only occasional reaching. (*Id.*). After reading the first hypothetical, the VE stated that the only position that would meet the criteria would be the care aide position, but also noted that he "scratched" that position out because he believed the ALJ "knock[ed] it

off" the list. (*Id.* at PageID.95). The ALJ responded that it is under advisement, but for the purposes of the hearing, the VE can assume it is past relevant work. (*Id.*). After the second hypothetical was read, the ALJ asked if that individual could perform Plaintiff's past relevant work, and the VE responded "[t]he care aide, as it's typically performed. I think standing and walking for a – typically the job requires more than that." (*Id.*). The ALJ then asked "[and] how about the care aide as actually performed," to which the VE responded "[t]hat's what I am talking about." (*Id.* at PageID.96). The ALJ then asked Plaintiff to approximate how long she would be on her feet while working as a caretaker for her brother and she responded around two and a half hours total, but it primarily depended on medical appointments, showers, and cooking. (*Id.*). The VE then responded that "relative to that position as performed, it sounds like she would've been able to perform it." (*Id.*).

Plaintiff's counsel noted that the arrangement involved caring for her brother in her own home and challenged whether the parameters would work in competitive employment. (*Id.* at PageID.98–99). The VE indicated that he believed "the elements of the job could be done wherever it is." (*Id.* at PageID.99).

In the ALJ's decision, the ALJ included a limitation in Plaintiff's RFC limiting her to only occasional reaching. (*Id.* at PageID.51). The ALJ found that "[a]lthough some degree of overhead reaching is warranted by her shoulder

13

tendonitis, she does not experience significant neurological abnormalities warranting any notable limitations." (*Id.* at PageID.54).  Responding to Plaintiff's argument regarding the lack of testimony on her ability to reach overhead for a position that requires frequent reaching, he noted that "claimant's do not typically testify in vocationally specific and relevant language regarding the nature of their work."  (*Id.* at PageID.56).  The ALJ also stated:

> The vocational expert interprets and classifies a claimant's work activity in such terms based on the claimant's broad description of such activities.  The vocational expert was permitted to make reasonable inferences from that testimony in classifying her work as actually performed, including determining the frequency of overhead reaching she likely performed based on her description of such activities.  The claimant's representative had the opportunity to interview the claimant about her reaching activities and cross examine the expert about the impact of the claimant's reaching limitation on the ability to perform this occupation, but the representative did not raise these issues during the hearing.

(*Id.*).  The ALJ found that "there was sufficient evidence in the record to classify the claimant's reaching activities in the above past relevant work," and that "[t]here are no inconsistencies between the occupational evidence provided by the [VE] and information in the [DOT] and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)."  (*Id.*).  The ALJ concluded that he was "satisfied by the expert's explanation that the testimony was predicated on the expert's education, training, and years of professional experience."  (*Id.*).

14

SSR 82-61 states that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" 1982 WL 31387, at *2 (Jan. 1, 1982). SSR 82-61 continues that:

> There may be cases involving significant variations between a claimant's description and the description shown in the DOT. In some instances, an apparent variation may result from an incomplete or inaccurate description of past work. Employer contact or further contact with the claimant, may be necessary to resolve such a conflict.

*Id.* Additionally, SSR 82-62 states that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." 1982 WL 31386, at *2. As discussed above, the determination of a claimant's ability to do past relevant work requires consideration of: "(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the [DOT], etc., on the requirements of the work as generally performed in the economy." *Id.*

15

Here, the undersigned suggests that the ALJ and the VE erred by relying on an "incomplete or inaccurate description of past work" and did not elicit sufficient testimony to establish that Plaintiff could perform her past relevant work. As outlined above, Plaintiff provided a brief and incomplete description of her past work as a care aide for her brother and her limitations in carrying out those tasks. It is clear that there are "significant variations between a claimant's description and the description shown in the DOT," yet the ALJ did not elicit additionally testimony to resolve this conflict. *See* SSR 82-61, 1982 WL 31387, at *2. The undersigned also notes that there was considerable confusion in the record involving the VE's testimony. First, on the issue of whether Plaintiff's position as a care aide was past relevant work caused the VE to seek clarification more than once on whether the position had been eliminated from consideration, including the VE indicating that he had struck it from his own list because he thought the ALJ eliminated it. (ECF No. 7-1, PageID.95). Next, after the second hypothetical was read, the ALJ asked if that individual could perform Plaintiff's past relevant work as a care aide, and the VE responded that "as it's *typically performed*" the job requires more walking than Plaintiff is able to do, then the ALJ asked about the position "as *actually performed*," to which the VE responded "[t]hat's what I am talking about." (*Id.* at PageID.96). The VE's testimony is contradictory on this issue, but the questioning continued without seeking clarification.

16

"Although the substantial evidence standard is deferential, it is not trivial." *Hall v. Comm'r of Soc. Sec.*, No. 1:14-CV-13767, 2015 WL 9684914, at *4 (E.D. Mich. Dec. 4, 2015), *report and recommendation adopted sub nom. Hall v. Colvin*, 2016 WL 98155 (E.D. Mich. Jan. 8, 2016). Even if the ALJ's decision here may arguably meet the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)); *Bettina H. v. Comm'r of Soc. Sec.*, No. 2:23-CV-10351, 2024 WL 234399, at *1 (E.D. Mich. Jan. 22, 2024); *see also Bazzi v. Comm'r of Soc. Sec.*, No. 20-10963, 2021 WL 4167209, at *3 (E.D. Mich. Sept. 14, 2021) (The Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.") (citations omitted).

The ALJ's decision leaves it unclear how the ALJ and VE accounted for Plaintiff's limitations in performing her past work as a care aide for her brother, and this error is prejudicial to Plaintiff. As a result, the undersigned recommends remand.

The undersigned also notes that as a result of the ALJ's findings at step four, step five findings were not provided. On remand, should the ALJ determine that

17

Plaintiff is unable to perform her previous work as a care aide either actually or generally performed, then the ALJ must determine whether she has "the capacity to perform other substantial gainful activity that exists [in significant numbers] in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2); *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## VI.    RECOMMENDATION

For all these reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Plaintiff's *Motion for Summary Judgment* (ECF No. 12) be **GRANTED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 14) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED** for further findings in accordance with this decision.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and*

18

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: March 17, 2026

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge